113-749 Julie Meierdirks v. Northbrook School District Richard Greenfield for the employee, Julie Meierdirks. This case is one that surprised me from the very beginning when the decisions came out. We're dealing with a teacher who is doing her job where the, as I'm sure you read in the briefs, is in a circumstance that is not that of the general public. This is a lady who is teaching class. She was at the end of the day of a school day that was very difficult. There was an assembly in the morning. She was dealing with children who were used to having homeroom at the end of the day. It's a Friday. They're 7th graders at the end of the year. Some with newly found hormones. They're always ready to get ready. It's a social hour at that time. But this time we have a class. We have a group of students who are, well, as Ms. Meierdirks said, were active. I think that was the nice way to put it as a teacher. They were talking. She had an assignment to give to them. She was concentrating on the children. She was walking around a desk. This is a lady who had a brace on. There was new fluffier carpeting, and as a result of her concentration and coming around and trying to get closer to the children, she had a fall. The point of law that we're obviously looking at is whether a neutral risk that was described in this case has been... Counsel, let me interrupt you just for a moment here to start out with the proper standard of review. And I note that you and your opponent differ as to what you propose the standard should be. You propose a de novo. Yes, we do. And why is that? The only proof in the record is the testimony of the petitioner, and there is the respondent placed into evidence a statement of the petitioner. There is really no dispute as to the facts. There is nothing in the record that indicates other than what she testified to as to the condition of the carpeting. There's nothing in the record that changes anything about the mood of the classroom. There's nothing that indicates that anything that she said was less than true. The arbitrator basically stated that this was a neutral risk. There are no inferences. What caused her fall? What caused her fall? Her fall was caused by what I call a perfect storm. She's a lady who has the arthritic problem. She has the risk. There is new fluffier carpeting. There's no question about that. She is concentrating on what she is doing. She has a book on the table. She is looking at the book. She is looking at the children. She's coming around the desk. She has 16 kids spread across the room. She testified she's trying to maintain eye contact, trying to see them. But that's a normal part of any teacher. Did she testify that there was something going on in the classroom that distracted her or she was responding to some student behavior that caused her to fall, which is in the cases you cited were a little bit different. Here, as the arbitrator found, she's just walking across a carpet at her place of work. And she cites no defect. If I'm missing something, tell me. Other than fluffier, she doesn't cite any problem with the carpeting itself that caused her to fall. No. There was no defect. She was not rushing. She was not carrying anything. The one thing that we have to look at, though, in the cases that cite those requirements is that she was performing some work-related task which contributes to the risk of falling. What was the task? The task was being in a situation where there were time constraints. She was watching the children. She's coming around. She has a classroom with 24 desks. We don't know where the children all were. And she's trying to maintain eye contact, trying to talk to them. Is this any different than coming down the stairs and having a child come up to ask her a question and distract her and she falls on the stairs? We have a myriad of step cases. But here's what you're saying here that's different. In all of those instances, there was something going on relative to the students' movements, needing behavioral, you know, looking to do something vis-à-vis the students or interacting with the students. Right. Here you're saying, well, she's looking at the students. She's going around the desk. Well, the students weren't doing anything that caused her, distracted her, were they? Yes, they were. And that's the proof. Other than sitting in their chairs, what were they doing that specifically distracted her? They were talking. They were packing their goods. She was trying to keep contact with them. It was a situation where these were kids who were not usually getting anything. Did she testify to this specifically? Yes, specifically. That she fell because of these things? She testified what she was doing. And then it would require an inference that the fall was due to this inattention caused by these distractions. I look at it more as factual, that this perfect storm that we have where all of these things that are going on, where she's coming around and talking to the children and trying to move close. She testified she's even trying to move closer to get their attention. Well, it requires an inference because you indicated that she didn't testify that that was what happened, that she was distracted as a result of the children. If it's not factual, then it would require an inference. Well, she didn't testify that. She testified she fell while she was doing this. If that's an inference, then that would be correct, and that would be certainly a weakness. But I think that what she has described and the number of things that were going on at the time is certainly not something you would expect from someone in the general public. It's not a risk that someone would have. It's not walking across the floor. It's not going across your living room. This is trying to make contact. It's a teacher doing her job. Your position is any time a teacher slips and falls in a classroom, it's compensable, because obviously if they're doing their job, they have to be watching the students. They have to be concentrating on the classroom, right? Well, if you're asking if the situation was not the way it was, if she was just coming across the desk and there was a fluffier carpet, would I still be standing here today arguing? Your answer is you would be. Well, the answer is I probably would be. But the fact is that there's a lot more than that. How is this different than any? I mean, you seem to be elevating the fact that she's talking to the students. What else do you do in a classroom? I mean, wouldn't you always be looking at your students? You don't always have the same situation with students. You don't always have the end of a Friday where the kids were not able to socialize. They're packing their goods. I mean, this is a teacher that's being conscientious. She's trying to do her job. The kids are worse than usual. She says very active. It's almost like going into, I guess, a lion's cage. I would look at it differently than a teacher would. Excuse me, counsel. You describe all the things that were going on at the time. The question is where's the evidence of the causal link between those things and her falling? There is none. There's no one item. It's a number of things. It's the whole picture. It's the totality of the situation. Would you agree with me that all those things could be going on in her not falling? Certainly. It's probably happened in the past. But the question is then, what was it about what was going on that day that was a cause, a contributing cause? It doesn't have to be, as we all know, the primary cause or anything that contributed to cause her to fall. We look at it as an unusual day. It's one where the classroom's time is shortened. She usually does not give homework. She's trying to finish before the last three or four minutes or whatever the amount of time is before the bell rings. She is pressured. She is doing something that is other than what the general public would do. It's not so much what a teacher would be doing or not doing, but would a member of the general public be doing what she is doing, trying to maintain the eye contact, trying to do this, trying to beat the bell? Isn't that something more than what you would expect the risk to the general public to be? And that's, I believe, what we had to prove. At no point in her testimony did she say, that's what caused me to fall. I was rushing around. She did not say point blank, that's what caused me to fall. She described what she was doing. She described the scene. She didn't say, as a result of this I fell. She did not say that. No, she did not point blank say, that's what caused me to fall, because I don't think she knew what caused her to fall. I don't think anybody knows. But the whole picture. Excuse me, sir. From that scene then, the commission, they could have drawn an inference and said, you know, all these things that have been described, that was a cause of her fall, or they could draw an inference and say none of these things contributed to her fall. So then we're at manifest weight. I think it's an improper inference. I think if they're at manifest weight, that the case would still go to the same, you take different routes, but you wind up at the same location. No reasonable person. I don't think so. I think when you compare it to what the general public would do walking across the carpet, you have a far greater circumstance and, you know, far greater risk to fall. Again, it's like walking down the staircases. Everybody doesn't walk down the stairs carrying a purse and a Coke and fall down the stairs. We have cases where these happen. We don't know what causes the fall. We just know what was going on at the time of the occurrence. But in most of those cases, the injured worker said they were distracted. They were distracted by something they were carrying or they were distracted by something else that was related to the employment. She never testified she was distracted. She testified. She never said what was going on. She testified that she was acting in a way that because of the way the classroom was, she was moving around. She was trying to maintain eye contact. And, again, maybe it's an inference that maintaining eye contact and not looking where you're going, but it's not something that she actually testified. The question becomes, I think, it gets more basic. Am I always distracted from my ability to walk every time I'm trying to maintain eye contact with somebody? Sometimes I am and sometimes I'm not. So the question becomes, what evidence in this record allows us to say that no reasonable man could come to any inference other than the fact that she was distracted? What's in the record is a set of circumstances that I believe the proper inference is that there were distractions going on, which was more than what someone in the general public would be exposed to. Again, no more than any of the staircases. People walk up and down the stairs and they don't fall. But that distraction was exceptional. It was greater, even for a teacher, to be doing what she was doing because of the unusual circumstances of the day. Thank you, Counsel. Thank you. Counsel, you may respond. If you don't mind, focus on that last summary that opposing counsel gave in response to Justice Hoffman's question. I'll do that, Judge. Thank you. Good morning, Your Honors. My name is Matthew Sheriff. I'm here for the employer, Northbrook School District Number 28. And as you've indicated, just really briefly, Judge, to address the standard of review, I think it's very clear that it's a manifest weight case as you've indicated. We're on board with that because it's an inference issue. Very good. I think the issues raised by counsel are ancillary issues and don't focus on what I think the court focused on, what the arbitrator focused on, and what the commission focused on. You focus on what the actual actions were of the employee. She testified she was walking at a normal pace. She wasn't carrying anything. She set the scene of, she said active kids. I think counsel's kind of embellishing slightly what she means, but I don't think there was kids running around. It was not like cases cited by counsel where teachers were restraining kids. She was not running out of her desk to restrain kids or because kids were fighting or because kids were acting outrageous. She was walking around her desk at a normal pace. She was walking on industrial carpet. I think a lot of things made about the fluffy carpet. It was by her own testimony, by everyone's testimony. It's industrial-strength carpet that was replaced eight months earlier at the beginning of the school year. We're now in this time of year and it was replaced in July. Well, industrial-strength carpet doesn't go to the map and the height and anything like that. Right, but I don't think it was any testimony. It wasn't like it was 1970s shag carpeting that she had difficulty walking on. I don't think that's what's involved here, and I don't think that's what she testified to. And she never testified that the carpeting caused her to trip, did she? No. Exactly. She was describing the carpet. Correct. And she was describing the condition of the kids at the time in the classroom. I think all those are not really causative factors. She didn't say they were causative factors. No one says they're causative factors. The arbitrator looked at all those facts. They were all raised. She testified to them. The arbitrator considered all those. The commission considered all those. They found that a reasonable person would find that her fall, which was unexplained, a neutral risk, it was simply an employee walking across carpeting at a normal pace, not carrying anything, that's not compensable. It did not arise out of her employment with the school district. I think it's as simple as that. And if you look at the cases that counsel cites in his briefs, those are all extenuating circumstances, which are much different than the case at bar today. Carrying something, responding to a student. In a hurry, trying to break up students downstairs versus a level carpet with no defect. She's simply walking at a normal pace around her desk. Somehow she stumbles over her own feet. She doesn't really know how she did it. She wears a brace. There's other inferences that could be made. Perhaps her foot caught off each other. Perhaps her brace was weakened on her one side that she's been wearing for a while. There's inferences that could be made. But there's no evidence that the inferences made and drawn from the evidence by the arbitrator and by the commission are unreasonable. And certainly under the manifest weight standard, I don't see any reason why this should not be affirmed. Thank you, counsel. Thank you. Counsel, you may reply. Thank you. As far as inference, as far as the brace or anything like that, that would be a personal risk. And I think if the commission had made that inference, that would be in the decision, as opposed to saying that this is a neutral risk. As far as the activity is concerned, we have included the record is like this. The important part of the record is probably eight pages, seven pages, which we have included in the appendix as an excerpt of the transcript. She's describing the kids as very talkative, very animated. They wanted to go for the weekend. They were ready to be out of school. There was talking. There were murmurs. And I was trying to make sure I had their full attention while I was explaining the homework that I was explaining as more talkative than normal, that they were more talkative. She is, in fact, while not walking fast, while not carrying anything, still doing something that increased the risk of her fall. I think that's what the case law is, and we ask that the case be remanded. Thank you very much. Thank you, counsel. Thank you, counsel, both. This matter will be taken under advisement of this position or issue. The court will stand in brief recess for a few minutes.